Good afternoon, members of the panel. My name is Thomas Karam. I represent the Green family, the appellants in this case. Thank you for the opportunity to be heard in accommodating Mother Nature. In looking at the party's statement of the facts in their briefs, their appellate briefs, I realize that perhaps the panel is wondering if the parties are not two ships passing in the night. The plaintiffs have brought a section 42 U.S.C. 1983 claim of violation of the family's integrity under the 14th Amendment. The defendants, the appellees, have gone at length to recite the underlying state court proceeding, not the federal trial from which we're here on appeal. And they recite a number of state court procedures in particular. Maybe, you know, maybe you could just help me. So as I understand it, the case got narrowed. You had a number of claims in the original complaint. And Judge Christensen narrowed the case down quite a bit, right? So what went to trial was the violation of your due process right to family integrity. And even that was limited by Judge Christensen's post-seizure conduct? Post-seizure, yes, Your Honor. So the trial was narrowed down in its focus, right? It was narrowed down to the implementation and application of the treatment plans. And your theory for why they violated your client's constitutional rights, could you explain that to me? The theory is the family had a substantive due process right. Maybe I should say, how did they go about violating that right? What did they do? So let me explain that as the state court implemented the treatment plans, they were constitutional on their face. They were court approved? Court approved, yes. What the defendants did here, defendants Lutz and Filson is, they applied the treatment plans unconstitutionally. In other words, how? They insisted that the family, the parents admit they harmed their child, literally injured their child by having unnecessary medical procedures done on her. Now, we have the, there's, there wasn't any actual event of injury ever proved in the underlying state child abuse case. So. So if you go back to the treatment, because I gathered that, you know, I think I do understand your argument, but I went to the plan. Where in the plan, and I don't know if I have the right plan, but, but the one I have in front of me is from July 13th. Your Honor, you're speaking of the treatment plan, court ordered by the state. 20,006, 05? I believe it was 06. That was finally when the treatment plan was court ordered. There was, is there something in this plan that you contend the defendants used to force the Greens to admit they had injured their child? Yes. Where, where is that in the plan? Defendants Lutz and Filson insisted that goal number five of the treatment plan. Goal number five. I don't have the exact excerpt page, uh, that, uh, under that goal that the parents had to acknowledge and expressly confirm that they had harmed their child by obtaining unnecessary, unnecessary medical procedures. That was not what the state court's treatment plan intended. And in fact, uh, had we had the opportunity to examine, uh, the defendants expert, Sarah Corbally, we would have used exhibit 12, uh, to cross-examine Corbally about the court's findings and, and the fact that the, the department, the social workers applied this treatment plan in a manner that forced the parents to incriminate themselves and to admit harm that there was no evidence had occurred. Well, you're kind of throwing everything against the kitchen sink here. And I mean, one of the And we've been cautioned not to define that too broadly. And so this concept of that they have a right to family integrity, I fear is defining it too broadly. And, and so, and then you need to have clearly established Supreme court law on that point. So what Supreme court, how are you substantive due process of the 14th amendment? Yes. It's one of our most sacred right. And what is the Supreme court case that establishes the right to family integrity? Uh, you know, I apologize. I do not have recall a citation to that right off the top of my mind. And I don't want to spend time going back to look for that citation. I will say that this circuit has clearly not this circuit. It's got to be Supreme court, the Supreme court, what the ninth circuit's always getting slapped on. It's not our precedent. You know, it's, you have to define the right narrowly enough. And then it needs to be clearly established by us Supreme court precedent, not by ninth circuit precedent. Your honor. I don't know the citation as I stand here, but there one of the first that established, uh, that, uh, fundamental right under the U S Supreme court. And that has been carried forward in this circuit. Uh, and it has just come to my attention. More recently, we had a case that, uh, came out where in, uh, Paul's V green eight one six F's up. I'm sorry. Uh, strike that hardwick V county of orange eight 44 F third 1112, wherein, uh, this court, this circuit embraced that fundamental integrity, that right to family integrity. And in particular, within judicial proceedings, uh, social workers are, uh, it's unconstitutional for them to lie or provide, uh, false evidence in initiating a, um, petition for abuse. Neglect evidence is not the claim here. And if I could finish your honor, there's further in that case held that during, uh, judicial proceedings, that the social workers are not protected by quasi judicial immunity. If they are not carrying out their quasi judicial functions, the lack, the, the, the function that these social works were carrying out was to force the parents to incriminate themselves and admit they harmed their child when that's not what the treatment plan said. Well, so you said paragraph, the goal five of the treatment plan, and it had to deal with, um, once the treatment team determines that Michelle has adequately discussed and explained her role in the issues, which caused EG to be adjudicated a youth in need of care, um, and made sufficient cause on her treatment plan, blah, blah, blah. It doesn't say anything here that she's going to have to admit injury or anything like that. Precisely, your honor. And that's what the social It doesn't say that. It doesn't say that she, that Mrs. Green has to admit that she injured her child. In no respectful, no constitutional court would cause or have a treatment plan goal where the parent has to incriminate themselves. Okay. That's not what the court, State court did. Okay. So it doesn't say that in this plan, but so what did, what do you allege is that as they, as Mrs. Green sought treatment, she had to go to a psychiatrist and all this other kind of stuff. And as they tried to work with her, what did they do that you presented? What proof did you present that they somehow or other did something egregious that violated the constitution? That violated the constitution. Well, forcing their parents to incriminate themselves in order as a condition to successfully complete their treatment plan in order to get their child back. And so that's what they did. They held their child over their head. I thought what they wanted them, that the psychiatrist testified that what they wanted her to do was to acknowledge that she suffered from this condition. This syndrome. The testimony of the social workers in the state court proceeding was, and in particular, Heidi Lutz, had we had the opportunity to cross examine Sarah Corbally, the defense's expert about the exhibit 12 and the court's findings in her testimony, social worker Heidi Lutz testified that because they failed to admit they harmed their child, they didn't successfully complete that treatment plan. Okay. So that's, and you told that story, what you're complaining about is you didn't get, what you're really complaining about is you didn't get to use the superior, the state district court's order denying the department's request to terminate parental rights. An 80 page order to cross examine. No. What we're really complaining about is the admission of defense's expert, Dr. Jenny, and the head of the department, Sarah Corbally, to testify because not only is their testimony irrelevant, but it's highly prejudicial. And it also. But it's not irrelevant because you're calling into, you're calling into question their behavior about what they did and whether there was a clearly established right regarding their behavior. So they've got to say what they did. I mean, you're, you put it front and center by virtue of suing them for 1983. Your Honor, I appreciate the question or the point. And again, I will say that 1983 action is a completely different issue from the state alleged child abuse. Okay. The state abuse proceeding. We're talking about state law and what they use. What was this, the trial that we're reviewing? What was the, what was the cause of action? 1983, right? Correct. Okay. And what, what did you have to prove? You had to prove that they violated a constitutional right and that it was clearly established. So they've got to be able to defend themselves as to what they did. And then it's up to the jury to decide that. I mean, you brought it, it's front and center. It's, it's kind of like you can't bring certain charges against someone and then say, but you don't get to put any evidence on. Your Honor, I, I understand your point. I do want to give my co-counsel. Chomping at the bit over there. Yep. And I just want to leave at this. And that is that the the case I cited to you again also when we talk about a clearly established, established right is that the social workers are immune only in the event of carrying out quasi judicial functions. More importantly they waive the immunity. This is the fourth shot they've taken at qualified immunity. In this appeal, they didn't appeal it. It was an interlocutory issue and therefore they've waived that right. All right. Let's hear from you. You wanted to share some time with your colleague. Now's the time. Jim Cummers representing the family. I represented them also in the state court proceedings. In answer to the court's inquiry of what specifically did they do? I can identify from Exhibit 12, which are the findings and conclusions of the state district court judge in returning the child to the family after a five-day trial in which the court identified several elements of the state's conduct, which had we been able to introduce it in evidence, could have argued it to the jury and cross-examined Corbally effectively. She's the division head of the department who brought this case to be and is also an attorney. And had I been able to use that exhibit in cross-examination of her, I would have been able to show that at finding a fact number 19 of Exhibit 12, the parents were fighting the plan because they felt it required them to give incriminating evidence that the department. Did they testify to that? When Mr. Green testified, did he testify to that? I don't recall Mr. Green's testimony, Your Honor. It is in the court's findings of fact in that document that that's what the evidence of the trial was. But you're talking the December 14th opinion, right? Yes, the 60-some page. Okay, 66 pages, but the opinion did not determine whether the department had proceeded in good faith, and we review that for abuse of discretion, correct? And so you have to tell me how the district court abused its discretion in limiting references to the state court's opinion on cross-examination because one of the things that you can say is, hey, I don't want to get into a whole mini trial over something else. And in that 66-page decision, the determination was whether parental rights would be terminated or not, which they prevailed on that. But it doesn't, but that's not res judicata as to the issues that you have to decide in a 1983 case. The duty of good faith referenced by the district court is at paragraph, conclusion of law number 11. It's on page 107 of our record. I do not have a text of that before me. The Fifth Amendment. The one point, you just made a point, though, that in that, in the superior court, I call them superior court, but it's a state district court judge, made this finding about, what did you just say it was? It was a finding about? Duty of good faith. No, before that, when I had asked you, when you got up there just a minute ago, when you first got up there. What specifically they did, and in regard to the duty of incrimination, I'm pointing to the record where had we been able to use this? When I read Mr. Green's testimony, that he testified that that was what he was, they were upset about, is they wanted them to basically. Fess up to a crime. Yeah. Yeah. That they injured their child. As a condition of passing the requirements of. He said, I wasn't going to do that because we didn't do it. We didn't harm our child. We were working with doctors. Yes. Right? Yes. And as a condition of passing the plan to the department of satisfaction, he had to admit that he harmed his child. That was a condition of it. And the district court in this exhibit, which I could not introduce in evidence, describes how that happened. At paragraph, conclusion of law number 18, it's our record page 110. The district court describes the Fifth Amendment right of the family to remain silent, and yet a condition of the state of Montana was they had to admit to incriminating evidence of child abuse in order to get their child back. That conundrum. Well, I guess, I don't know. I was trying, I was probing your co-counsel there because I was trying to understand, I understand the theory of the case, the family integrity, but I was trying to understand how you were going about proving that they violated that right. And it seemed to me when I was reading all of this stuff that what the department wanted, especially Mrs. Green, to do was to acknowledge that she suffered from this syndrome, Munchausen's disease, and they wanted her to acknowledge that and to get treatment for it and to demonstrate that she was getting it under control. That's what I, not that they were forcing them to admit that they intentionally injured their child. It is the latter. I can also cite to several different parts of this conclusion of law in this exhibit that answers the court's question, how the district court found that the family's right to remain silent was not a condition of the state of Montana. And your Honor, in response to your questions about case citations to the clearly established right, those cases are cited by us on pages 27, 28, and 29 of our brief. They involve Meyer v. Nebraska, Prince v. Massachusetts, the Troxel case mentioned by counsel. And they're all Supreme Court cases. They are. And to some extent, Santosky. But those are all. I'll let you guys. Do you want to make a point? Because I'm going to let you guys go way over. Had I been able to bring exhibit 12, I could have had Corberley, the expert, admit that the district court found that the manner in which the department implemented this plan and forced the family to admit to harming their child, which it had not done, was a violation of the right to family integrity, not in compliance with the plan, and a violation of their Fifth Amendment right to be free of self-incrimination. Okay. Thank you. I'll give one of you a chance for rebuttal. Thank you, Judge. Max Davis for Ms. Filson and Ms. Lutz. I disagree with my colleague, Mr. Karam, that we're ships passing in the night on this. I think we're both focused on the same issues. And frankly, Judge Callahan, I agree with you. You cannot define, you cannot find a Supreme Court decision that clearly defines improper conduct for the base as having been engaged in by Ms. Filson and Ms. Lutz for the purpose of 1983 jeopardy. It doesn't exist. And this case should have been dismissed. Because there's a, you know, a 1983 claim doesn't mean there's any criminal connotation by that. Pardon me, Judge? Use the word jeopardy. That relates to crime lawyers. Well, I'm sorry for being over- That's wakey criminal cases. No, I'm not suggesting criminal conduct. I'm suggesting liability. But the district court let this case go to trial on the merits of an alleged constitutional claim. And so they had to prove up their claim, deliberate indifference to violating the substantive right of family integrity. I agree. And our case law acknowledges, recognizes such a right for purposes of just the first step. It recognizes that that right exists, but it also recognizes that that right is not unconditional. Yes. They have to prove it by deliberate indifference, which is almost, which is one of the extreme levels of proof that exists. Deliberately, you consciously, it means you consciously set out to disrupt this family unit. I agree. And Ms. Lutz and Ms. Filson's liability under that standard only arose after a state district court had taken little E.G. from her parents in June of 2005. Well, yeah. And Judge Christensen said, you're not going to go after that. Understood. And they dropped it. Right. They had sued the original social worker who was involved in the decision in Billings in May of 2005 to tell Mrs. Green, you cannot take your daughter out of the hospital. And then the next week, court civil proceedings were begun in Bozeman, Gallatin County, to remove E.G. from her parents and put her into foster care. And that was confirmed in several successive proceedings. And so, again, my point, going back to picking up on Judge Callahan's exchange with opposing counsel, is where is this right so clearly defined by a decision of the United States Supreme Court that once a child has been removed by a court, extending the parent's full, the full panoply of due process rights, that it's so clearly established for the purposes of 1983 liability that. Well, okay, but you're approaching this from, it seems to me, all right, you have the trial, okay, and then you've got two trial issues. Did the district court abuse its discretion in allowing Dr. Jenny and Sarah Corbally to testify as expert witnesses? The second issue is did the district court abuse its discretion in not allowing the Greens to use the state court opinion in cross-examination? Then lastly, you raised, did the district court err in denying Lutz and Filson qualified immunity?  Okay, so counsel for the Greens seems to indicate because you didn't immediately file qualified immunity and you actually went to trial, and qualified immunity is to protect you from going to trial, that you still can't claim that. I'm not sure that's a correct statement of the law. But so from your perspective, I guess, I think you're asserting there's two ways that you can prevail. You can prevail on the first two issues if the district court didn't err. Or you can forget about the first two issues and say they were entitled to qualified immunity, and then you don't have to get to the first two issues. Am I wrong or right? You're right, and you can take it even one further step, that if we're wrong on the first two issues, you can still dismiss the case based on qualified immunity. So I don't know if I'm repeating it or giving you a third choice. But clearly, and I agree with you. I'm just trying to understand. Yes. Yes. I think you understand. That's how this presents itself. I apologize for interrupting you. Okay. No, no, no, no. That's fine. So why was there no abuse of discretion on the first two issues? The introduction of Dr. Jenny's opinion for precisely the reason that Judge Callahan just enunciated in her questioning to opposing counsel, that these ladies were being sued for malicious, deliberately malicious conduct. And I think there's a wide scope of relevance under those circumstances. If you're being sued. So the experts, well, my understanding that you're saying that the experts were, you were presenting evidence that E.G. had been medically abused and her health improved when she was removed from her parents, and that Letts and Filson properly handled the treatment plans while E.G. was in state custody. Yes, and I think the record reflects that Ms. Lutz consulted with a Colorado pediatrician, Dr. Donna Rosenberg, who said this was a case, and the term was Munchausen syndrome by proxy. Dr. Jenny didn't like that term and used medical child abuse. But it's basically the same conduct, that because of a psychological deficit, psychiatric deficit in the parent, that they projected onto the child the need for unnecessary medical care. That was the problem. So the child was gone for quite a long time, right? What was gone for a long time? The child was gone from the parent for quite a long time. The child was gone from June of 05 until basically January of 08. Yes. All right, and then when the child came back, she didn't have a tube. The feeding tube was removed in a matter of days from the original assumption of foster care, state custody, in June of 05. The ileostomy bag, the poop bag as I refer to it, was, it took some longer period of time, it's called motility testing, to make sure, you know, your large intestine's been disconnected from your digestive system for an extended period of time, several years. Will it work if we pull out the bag? That proved successful. Then the surgery was performed in Denver, I forget the exact date, but it was after several years, and the surgery was successful. So on this December 14, 2007 opinion, they wanted to cross-examine on that. Did they just want to put the whole opinion into evidence? Well, my understanding is they wanted to offer it as an exhibit. Judge Christensen, I think, very correctly determined it isn't something that of which he can take judicial notice under Rule 201. It's not an adjudicative fact, and it opened a Pandora, you know, beyond that, it opened a practical Pandora's box. I mean, plaintiff wants to say, we want to try this narrow issue of plaintiffs, the Greens, having been forced to incriminate themselves as a condition of getting their child back. Like you, Judge Pais, I don't think that's a correct reading of what the social workers were trying to do in 2007. But more importantly, it would have, you know, everything, the idea that this would be a litigating the entire proceeding over two and a half years based on Judge Brown's lengthy opinion and order. But, again, more problematically, I think under the rules of evidence, it simply wasn't admissible. Just explain for me again, by offering the expert, Dr. Jenny? Dr. Carol Jenny, yes. Jenny, she was offered to prove what? To prove that this was real, that the conditions that prompted Ms. Lutz and Ms. Filson to want to have the Greens come to grips with what had happened was legitimate, that it wasn't something created out of whole cloth, some kind of malicious conspiracy to take their EG away from her parents for no good reason. Well, is Munchausen by proxy something that the normal person would know what it is without an expert testifying? My understanding from the social workers is they had some rudimentary knowledge of it. But, no, you need some pretty specialized medical opinion. And that's why they reached out, again, to understand what was going on with this little girl. Why did she have at age five a feeding tube and an ileostomy bag? And the other expert? It was Ms. Corbally, who at that time... just eliminated that they were not acting in total derogation of their obligations as social workers, which, again, goes to are they acting maliciously and for no good, proper reason? And, again, we had, I think, seven different topics on which we proposed to have Ms. Corbally testify. And she only testified on the last two, six and seven. Well, is it the standard of care of social workers? Or what was she testifying? I think it does impact the standard of care, but it also bears on the, again, I don't want to use criminal terms here, but they're accused of malicious conduct. No, they're not acting maliciously. They're doing their job properly to do this, to take these steps. And the other point I'd raise is each one of these steps, I mean, what they're facing liability, they were acting hand-in-hand with the county attorney. And we had presented her. I mean, she's the one who filed the petition to terminate parental rights, Ms. Dudick. And, again, there's no evidence that Ms. Filson or Ms. Lutz controlled the county attorney and told her to file certain papers or else. She's the one who brought the case to terminate parental rights. They didn't disagree with her decision to do so, but to suggest that Ms. Filson and Ms. Lutz had liability for that, pursuing that, which led to the creation of Exhibit 12, is one step further away from the basis for there being any 1983 liability. I mean, you just get farther and farther away. And, again, I go back to my point. This case, yes, I think Judge Christensen erred by failing to dismiss it on qualified immunity grounds. The cases which the Greens cite, Pearson v. Callahan and Mitchell v. Forsyth, the two Supreme Court cases, don't stand for the proposition that you somehow waive your 1983 rights by not appealing immediately. And, again, admittedly, our motion for summary judgment on qualified immunity grounds was raised late in the case. I didn't see anything in 1983 jurisprudence that suggests you have to move at a certain time. And, obviously, particularly with Judge England as a trial judge, you have no control over when the judge decides that. And he did decide it on the eve of trial. We made a calculated decision then with witnesses coming or whatever. We would go to trial but preserve that. I don't think there's any jurisprudence that says, you know, by going to trial, when you could have stopped the trial and sought an interlocutory appeal, you've waived it. That seems to be the argument. And those two Supreme Court cases do not say that. So we haven't waived it. And the point is, if it's the kind of right that gives rise to an interlocutory appeal, it seems to me it's an implicit concession by the judiciary that this is an important right. But I think the case law goes on to say that when you do the qualified immunity analysis after trial and you're down to the second step, you look at the facts that were presented at trial rather than what's alleged in a summary judgment. No disagreement. The factual predicates have changed once you get to trial. But we get back to, as Judge Callahan suggested and you've suggested, that if we're wrong on the evidentiary rulings, this case should nonetheless be dismissed. And that's our beginning point, and it's my end point. But just the court's judgment should be affirmed. Yes. Yes. Thank you, Judge. All right. So who's going to get one shot? In response to Mr. Davis's reference to the waiver of the immunity defense, again, he references Pearson v. Callahan, that court held that if the case is allowed to go to trial after final judgment, that defense is effectively waived. I'll point out again, this is now the fourth bite at the immunity defense that the defense or the qualified immunity defense that the defense has taken. They've had plenty of opportunities. And I want to point out, too, that their expert, Dr. Jenny, testified effectively that Munchausen syndrome by proxy was junk science and that they ought to have relied on. In fact, gave the opinion in federal district court that child medical abuse is a proper diagnosis. This is an ex post facto opinion. And theory that the defendants. Oh, most experts come up with ex post facto opinions. Sure. You bring in all these experts. In all these cases, you bring in an expert to take a look at something that happened beforehand and offer a quote unquote expert opinion. But that would have been appropriate if they had testified, if she had testified in the underlying state case. What the defendants did not have before them is this new theory of medical child abuse. No, but this was a new case. And I will say. This is a new case. This is a separate new case brought under a federal civil rights statute where you allege that the defendants violated your client's constitutional rights. You had the burden of proving. Yes, Your Honor. Due process violation, which is really tough. It is tough. And that is why it's so prejudicial that these two experts were allowed to testify. What effectively the defendants were allowed to do is put the plaintiffs in a tenuous situation to have a second trial and put on a defense to this now collateral trial issue introduced, child abuse, in this constitutional case issue. And that they were allowed to mislead the jury and confuse the issue, confuse the issue with a constitutional one against a state issue. Okay. I think we got it. Thank you. Thank you, counsel. We appreciate your arguments. The matter is submitted.
judges: Paez, Callahan, England